IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **RICO LAMAR BALLARD,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:21-cv-00140-MTT-CHW |
| | : | |
| **Officer MATTHEWS,** *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. §1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| | : | |

### REPORT AND RECOMMENDATION

Before the Court is a motion for summary judgment filed by Defendants Coffee, Logan and Matthews. (Doc. 66). It is **RECOMMENDED** that the motion be **GRANTED in part**, as to Defendant Matthews, but **DENIED in part**, as to Defendants Coffee and Logan. It is further **ORDERED** that Plaintiff's pending motions (Docs. 73, 74, 77, 78) are **DENIED**.

### FACTS

This Section 1983 action arises out of an inmate-on-inmate assault that occurred on December 5, 2019, at the Georgia Diagnostic and Classification Prison. In the weeks leading up to the assault — at some point "between November 1st and December 5th, (Pl.'s Dep., Doc. 66-3, p. 15) — Plaintiff asserts that Defendants Tommy Coffee and Rufus Logan, two high-ranking prison officers, conducted an inspection of Plaintiff's dorm and made statements suggesting that Plaintiff's dormmates should murder Plaintiff:

> Q: So what do you say happened during that inspection that is related to this lawsuit?
>
> A: Man, all I know … them folk[s] came through, the other man said, yeah, y'all can go on and kill him …. [They told] them folk that they can go on and kill me[.]

(Pl.'s Dep., Doc. 66-3, pp. 15–16)

Some of Plaintiff's filings intimate that Defendants Coffee and Logan made these inciting statements out of frustration with Plaintiff's assertion that he is entitled to be released from prison. Plaintiff has also sought to litigate that issue in this Court. As elsewhere explained, however, Plaintiff may not litigate claims seeking a release from state custody in a Section 1983 action. *See Ballard v. Morales*, No. 5:21-cv-138, CM/ECF Docket No. 9, p. 8 (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)).

On the morning of December 5, Plaintiff spoke to another inmate named Aikens about Aikens's possession or possible theft of Plaintiff's legal mail. (Pl.'s Dep., Doc. 66-3, pp. 15–16). In response, inmate Aikens assaulted Plaintiff with a knife:

> [I] was like, man, the officer gave you my legal work. And I leaned up against the door. And he walked in his cell, grabbed his knife or whatever and got aggressive. [He yelled,']Get the fuck away from my cell.['] And then [he] just started stabbing me …. Stabbed me right there … on my arm and my back[.]
>
> (Pl.'s Dep., Doc. 66-3, pp. 21–22)

During the assault, Plaintiff ran from Aikens through a common dormitory area toward a security door. (Pl.'s Dep., Doc. 66-3, pp. 21–25). *See also* (Doc. 66-4, p. 1) (Plaintiff's diagram). As Plaintiff fled, another unknown inmate also joined in the altercation.

During the altercation, Plaintiff alleges that Defendant James Matthews, a prison guard, approached to "see[] what was going on" by opening two doors connecting three rooms. Those rooms were (i) the common dormitory room where the altercation began, (ii) an antechamber housing a grievance kiosk, and (iii) an outer hallway. In Plaintiff's terminology, a "security door" connected the dormitory to the antechamber, and a "hallway door" connected the antechamber to the hallway. (Pl.'s Dep., Doc. 66-3, p. 29).

Plaintiff testifies that Defendant Matthews initially opened and ran through both doors, but upon seeing the altercation, Matthews fled back through the antechamber and into the hallway, and then closed the hallway door. (Pl.'s Dep., Doc. 66-3, p. 28). Meanwhile, the prisoner altercation moved through the open security door and into the antechamber.

Plaintiff's Eight Amendment claims against Defendant Matthews in this action are predicated on two subsequent factual allegations. First, Plaintiff testifies that Defendant Matthews briefly opened the hallway door to discharge chemical spray into the antechamber.[1] As Plaintiff put it, Matthews "stepped in the door and he sprayed me in my wounds … with the O.C. spray or whatever kind of spray it is while I'm holding this dude's knife trying to keep the dude from stabbing me." (Pl.'s Dep., Doc. 66-3, pp. 30, 32). In addition to suffering chemical spray in his stab wounds, Plaintiff claims that the spray was harmful given that he suffers from bronchitis. (Pl.'s Dep., Doc. 66-3, pp. 38).

Second, Plaintiff alleges that Defendant Matthews's presence at the hallway door impeded the immediate entry of other emergency response or "CERT" officers, who were "already out there." (Doc. 66-3, p. 36). After an unspecified but brief amount of time, these officers gained entry to the antechamber, established order by means including the discharge of firearms, and arranged for Plaintiff to be transported for medical treatment. (Doc. 66-3, pp. 38–39).

## PLAINTIFF'S MOTIONS

In addition to the Defendants' motion for summary judgment, Plaintiff has four pending motions before the Court (Docs. 73, 74, 77, 78). One of those motions, though — a motion labeled "motion to amend continuation to objections to motion for summary judgment" — appears to be

---

[1] Matthews contends that other officers discharged the chemical spray. *See* (Doc. 66-6, ¶ 4) (Holland Decl.) (Doc. 66-9, ¶ 4) (Matthews Decl.). The facts herein are based upon Plaintiff's deposition testimony, which the Court must accept as true for purposes of summary judgment.

3

a response to the Defendants' summary judgment motion, rather than a request for specific relief. The Clerk of Court is accordingly **DIRECTED** to **TERMINATE** that motion (Doc. 77).

Plaintiff's three remaining motions (Docs. 73, 74, 78) seek largely to compel responses to interrogatories or requests for production relating to Plaintiff's anticipated release date, a subject not relevant to Plaintiff's claims in this action. Plaintiff also seeks the production of medical records, which are already available, *see* (Docs. 66-10 through 66-12), as well as the production of prison camera footage, which does not exist. *See* (Doc. 84-1).

Plaintiff's few remaining requests pertain to prison SOPs or standard operating policies, but as already explained in a previous order denying Plaintiff's prior motions to compel, (a) the Defendants have provided policies relating to offender discipline, and (b) the mere violation of an SOP does not establish a constitutional violation. *See* (Doc. 75, pp. 2–4). *See also Jackson v. McLaughlin*, 2016 WL 6395902 at *4 (M.D. Ga. 2016) ("A violation of the administrative SOP is not alone a basis for a constitutional claim under § 1983"). Accordingly, Plaintiff's latest motions to compel discovery (Docs. 73, 74, 78) are **DENIED**.

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

# ANALYSIS

As discussed below, Defendant Matthews is entitled to summary judgment from Plaintiff's Eighth Amendment claims of excessive force and deliberate indifference. As to Plaintiff's claims against Defendants Coffee and Logan, however, (a) a reasonable jury could choose to credit Plaintiff's account that Coffee and Logan incited violence against him, and (b) Eleventh Circuit precedent sufficiently forecloses these Defendants' request for qualified immunity. Therefore, it is recommended that the Defendants' motion for summary judgment be granted as to Defendant Matthews but denied as to Defendants Coffee and Logan.

A.   **Defendant Matthews**

On the record before the Court, no reasonable jury could conclude that Defendant Matthews employed excessive force by discharging chemical spray in an effort to quell the attack upon Plaintiff by other inmates, including inmate Aiken. Similarly, there is no basis on the present record to conclude that Defendant Matthews was deliberately indifferent in his subsequent reaction to the attack after the discharge of chemical spray proved ineffective. Accordingly, Defendant Matthews is entitled to summary judgment on both of Plaintiff's Eighth Amendment claims.

1. Excessive Force

For two reasons, Plaintiff argues that Defendant Matthews's discharge of chemical spray during the December 5, 2019 attack amounted to an excessive use of force in violation of the Eighth Amendment. The Court must accept, for summary judgment purposes, Plaintiff's testimony that Matthews in fact discharged the spray. Plaintiff first argues that Matthews should not have deployed chemical spray given that Plaintiff suffers from bronchitis. Second, Plaintiff contends that the chemical spray penetrated Plaintiff's stab wounds, thereby causing intense pain.

Plaintiff's excessive force claims must be evaluated under the standard set by *Whitley v. Albers*, 475 U.S. 312, 320 (1986), a case that acknowledged the difficulty prison officials face when called to "restore order in the face of a prison disturbance" involving "very real threats … to inmates and prison officials alike." In this context, courts consider whether the use of force by prison officials "was applied in a good faith effort to maintain or restore discipline," or whether force instead was used "maliciously and sadistically for the very purpose of causing harm." *Id.* at 320–21. Pertinent factors for consideration include (a) the need for the application of force, (b) the relationship between the need and the amount of force used, (c) any efforts made to temper the severity of the force used, and (d) the extent of any injury inflicted. *Id.* at 321.

All of the *Whitley* factors weigh in Defendant Matthews's favor. Regarding the first factor, Plaintiff's physical altercation with other inmates, at least one of whom possessed a lethal weapon, warranted the application of some degree of force to restore order. Regarding the second factor, Defendant Matthews's use of chemical spray, a non-lethal measure of force, represents an appropriate compromise point between declining to intervene altogether on the one hand, and using lethal force on the other. Regarding *Whitley*'s fourth factor, degree of injury, Plaintiff's medical records indicate that Plaintiff suffered few or no lasting injuries from the discharge of chemical spray. *See* (Doc. 66-11, pp. 1–2) (listing Plaintiff's injuries as "superficial lac[erations]" requiring "5 simple sutu[r]es"). *Cf.* (Doc. 66-13, p. 2) (Aikens's medical records, listing the symptom of "redness / irritation [of] eyes," along with "sinus" problems). Finally, regarding *Whitley*'s third factor, there is no indication that Defendant Matthews was subjectively aware of Plaintiff's bronchitis, and Plaintiff's medical records offer no suggestion that Plaintiff sought treatment for respiratory inflammation or an inflamed stab wound following the altercation and chemical discharge.

On these facts, no reasonable jury could conclude that Defendant Matthews deployed chemical spray in an effort "maliciously and sadistically" to cause harm. Rather, because the evidence establishes as a matter of law that Matthews acted in a good faith effort to quell Aikens's attack upon Plaintiff, Defendant Matthews is entitled to summary judgment from Plaintiff's Eighth Amendment excessive force claim.

   2. Deliberate Indifference

In addition to his excessive force claim relating to the discharge of chemical spray, Plaintiff further argues, again for two reasons, that Defendant Matthews committed an additional Eighth Amendment violation through his conduct following the discharge of chemical spray. First, Plaintiff argues that Defendant Matthews should have personally intervened rather than closing, and remaining protected behind, the hallway door. Second, Plaintiff argues that Defendant Matthews's mere presence outside the hallway door impeded the ability of responding CERT officers efficiently to quell Aikens's attack.

These arguments by Plaintiff raise the standard of deliberated indifference,[2] which requires three showings: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019). The second prong of this inquiry, in turn, requires two showings: the defendant must have subjective knowledge of the risk of harm, and the defendant must also respond in an objectively unreasonable manner. *Id.*

---

[2] Arguably, the entire incident involving Defendant Matthews' alleged discharge of pepper spray should be evaluated under the *Whitley* standard. *See Whitley v. Albers*, 475 U.S. 312, 320 (1986) ("a deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance"). Even under the more favorable (to Plaintiff) standard of deliberate indifference, Plaintiff's claims against Defendant Matthews fail.

Both of Plaintiff's arguments fail to satisfy the second, "deliberate indifference" prong of the overarching deliberate indifference inquiry. Plaintiff argues that Defendant Matthews should have intervened in Aiken's assault with a knife upon Plaintiff. *See* (Pl.'s Dep., Doc. 66-3, p. 30) ("That man got a job coming in to scrap fights … he got a job obligation"). The record establishes as a matter of law, though, that Defendant Matthews acted in an objectively reasonable manner by (a) on Plaintiff's account, discharging chemical spray in an effort to quell Aikens's attack, and by (b) "call[ing] for assistance," which speedily arrived. (Pl.'s Dep., Doc. 66-3, p. 31). The Eighth Amendment did not require Defendant Matthews to engage in further "heroic measures," such as intervening, unarmed, in a prisoner knife fight. *See Rickmon v. Williams*, 2019 WL 4635588 at *5 (S.D. Ga. 2019) (collecting cases).

Plaintiff's second argument fails on the subjective prong of the deliberate inquiry. Plaintiff argues that Defendant Matthews's presence at the hallway door impeded the response of CERT officers who eventually were able to quell the altercation:

> Matthews was stopping everybody from getting in. He got in front of the door where nobody came in. He stepped in the door and he sprayed me in my wounds and stuff … with the O.C. spray or whatever kind of spray it is while I'm holding this dude's knife trying to keep the dude from stabbing me with it.
>
> (Pl.'s Dep., Doc. 66-3, p. 30)

Nothing in the record suggests that Defendant Matthews's conduct was subjectively wrongful or that Defendant Matthews subjectively perceived the possible increased risk created by his presence outside the hallway door. The available evidence indicates, to the contrary, that Defendant Matthews acted in a good faith effort to quell the fight. Even if Defendant Matthews' conduct slightly delayed the arrival of CERT officers, Matthews's conduct was at most based upon negligence, which is insufficiently culpable. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)

8

("To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind") (internal quotations omitted). Accordingly, Defendant Matthews is also entitled to summary judgment from Plaintiff's Eighth Amendment claim of deliberate indifference.

B.  **Defendants Coffee and Logan**

Unlike Defendant Matthews, Defendants Coffee and Logan have not demonstrated that summary judgment is appropriate.

The factual basis for Plaintiff's claims against Defendants Coffee and Logan is not well developed, but it is clear that Plaintiff contends Defendants Coffee and Logan made statements to other inmates within Plaintiff's dorm tending to incite violence against Plaintiff. For example, in his sworn deposition testimony, Plaintiff claims that the Defendants "yelled y'all can go on and kill him" while standing in front of Plaintiff's cell.[3] (Pl.'s Dep., Doc. 66-3, p. 16). This deposition testimony corroborates factual allegations that Plaintiff previously advanced in his complaint. *See* (Compl., Doc. 1, p. 7) ("this attack upon my life was a direct result of Unit Manager Rufus Logan [and] Deputy Warden Tommy Coffee … instructing and/or ordering inmates to kill me"). Plaintiff alleges that Defendants Coffee and Logan made their inciting statements "within [a] week or two" before Aikens's attack. (Pl.'s Dep., Doc. 66-3, p. 17).

Plaintiff's allegations are actionable, and the appropriate legal standard for analysis is deliberate indifference. The opinion of the Second Circuit Court of Appeals in *Snider v. Dylag*, 188 F.3d 51, 55 (1999) offers on-point guidance. In that case, a prison official purportedly "declare[d] 'open season'" on Snider, a prisoner–plaintiff, meaning in formal terms that the official "issued an order of permission for inmates to abuse Snider." *Snider*, 188 F.3d at 55. The Second

---

[3] Defendants Coffee and Logan have submitted declarations denying that they made any such statements, but the Court must accept Plaintiff's deposition testimony as true for purposes of summary judgment. *See* (Doc. 66-14, ¶ 3) (Logan Decl.) (Doc. 66-15, ¶ 3) (Coffee Decl.).

9

Circuit held as follows: "If Dylag [the prison official] did, in fact, declare 'open season' on Snider, indicating to other inmates that their abuse of Snider would be unimpeded by prison officials, [then the] deliberate indifference to Snider's safety would be obvious." *Snider*, 188 F.3d at 55. The Second Circuit further stated: "this is a situation where a prison official allegedly decided that Snider, for whatever reason, was not 'worthy' of the official's protection, and, worse still, the official allegedly conveyed this sentiment to other inmates[.]" *Id.*

Defendants Coffee and Logan advance two arguments on the merits in support of their request for summary judgment, but neither argument is sound. First, the Defendants argue that they lacked subjective awareness of a particularized risk of harm from inmate Aikens.[4] Knowledge of particularized harm is required in the failure-to-protect context because "[p]risons are necessarily dangerous places." *Farmer v. Brennan*, 511 U.S. 825, 858 (Thomas, J., concurring). Hence, to warrant responsive conduct by prison officials, prisoners must demonstrate more than a mere general fear of harm.

Plaintiff's claim in this case, however, is not one of failure to protect. Rather, Plaintiff alleges that Defendants Coffee and Logan themselves created a risk of harm by targeting Plaintiff for violence, and by notifying inmates that violence against Plaintiff would be sanctioned. Inmate Aikens was not the only source for potential harm, as evidenced by Plaintiff's deposition testimony indicating that another, unnamed inmate also participated in the assault. (Pl.'s Dep., Doc. 66-3, pp. 22, 24). Even if that other inmate had not participated, Defendants Coffee and Logan cannot escape liability for a risk that they allegedly created merely by virtue of their inability to predict precisely how that risk would materialize. As the Second Circuit put it in *Snider*, if Defendants Coffee and

---

[4] *See* (Summ. J. Mot., Doc. 66-1, p. 18) ("The record lacks evidence that Defendants Matthews, Logan, or Coffee were aware of any likelihood … that Plaintiff would be involved in an assault with inmate Aikens").

10

Logan "did, in fact, declare 'open season'" on Plaintiff to other inmates with the "opportunity to hurt," then the "deliberate indifference … would be obvious." *Snider*, 188 F.3d at 55. *Accord Glover v. Ala. Dep't of Corrs.*, 734 F.2d 691, 694 (11th Cir. 1984) (vacated on other grounds, and specifically, vacating an award of attorney's fees against a governmental entity despite a personal capacity judgment on the merits).

The Defendants' remaining argument fails for a more straightforward reason, a dispute of fact. According to the Defendants, Plaintiff fails to show any causal connection between the inciting statements made by Defendants Coffee and Logan on the one hand, and Aikens's assault on the other. Instead, the Defendants contend that Plaintiff's disagreement with Aikens over possible retention or theft of Plaintiff's legal mail was the exclusive cause of the assault.[5] "[T]he question of causation is typically reserved for the jury," *Brooks v. Wilkinson Cnty., Ga.*, 393 F. Supp. 3d 1147, 1168 (M.D. Ga. 2019), and a jury's resolution of the issue of causation is appropriate here. Simply put, a reasonable jury could find that but for Coffee and Logan's statements suggesting that Plaintiff's dorm-mates should murder Plaintiff, Defendant Aikens would not have assaulted Plaintiff. Because a jury could reasonably choose to credit Plaintiff's narrative, summary judgment is not appropriate.

In addition to their merits-based arguments, the Defendants also argue that Plaintiff suffered no physical injury, and hence is barred from recovering compensatory damages by the Prison Litigation Reform Act or PLRA. *See Brooks v. Warden*, 800 F.3d 1295, 1298 (11th Cir. 2015) (citing 42 U.S.C. § 1997e(e)). Knife wounds are physical injuries.

---

[5] *See* (Summ. J. Mot., Doc. 66-1, p. 23) ("it is undisputed that Plaintiff initiated the confrontation [over legal mail] with Aikens which resulted in the assault between Plaintiff and offender Aikens"). Of course, Plaintiff further alleges that an additional, unknown inmate also participated in the assault. *See* (Pl.'s Dep., Doc. 66-3, p. 22) ("another one … came up and hit me from behind").

11

Finally, the Defendants also seek qualified immunity, which shields public officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In the Eleventh Circuit, "[r]ights may be clearly established for qualified immunity purposes by one of three methods: (1) case law with indistinguishable facts clearly establishing the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018).

The reasoning of the Eleventh Circuit Court of Appeals in *Glover v. Ala. Dep't. of Corrs.*, 734 F.2d 691, 694 (11th Cir. 1984), clearly establishes as a broad principle the wrongfulness of inciting prisoners to commit violent acts against their fellows. Although the facts of *Glover* are not "indistinguishable" from the facts here — a guard in *Glover* offered a reward of cigarettes for violence, and made the offer only days before an assault, as opposed to "within [a] week or two" (Pl.'s Dep., Doc. 66-3, p. 17) — *Glover*'s reasoning has long established the wrongfulness of inciting speech with a nexus to prison violence. *See, e.g.*, *Irving v. Dormire*, 519 F.3d 441, 450 (8th Cir. 2008) ("It was clearly established … that a guard is not permitted to threaten an inmate with death by means readily at hand. It should have likewise been clear that a guard may not threaten an inmate with death by means of … inciting other inmates to accomplish that which the guard may not do directly"). *Accord Hodgdon v. Downeast Corr. Facility*, 2010 WL 53504 at *3 (D. Maine, Jan. 7, 2010) (citing *Glover*). Because *Glover* gave sufficient notice of the wrongfulness of the inciting statements that Defendants Coffee and Logan allegedly made, those Defendants are not entitled to summary judgment on grounds of qualified immunity.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that the Defendants' motion for summary judgment (Doc. 66) be **GRANTED in part** as to Defendant Matthews, but **DENIED in part** as to Defendants Coffee and Logan. It is further **ORDERED** that Plaintiff's pending motions (Docs. 73, 74, 77, 78) are **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Objections are limited to twenty pages in length. Local Rule 7.4 The District Judge will make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 7th day of July, 2022.

                                            s/ Charles H. Weigle
                                            Charles H. Weigle
                                            United States Magistrate Judge